IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| RICHARD AMBROSE, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) Case No. 08−cv−0533−MJR−SCW |
| ROGER WALKER, MARK CARICH, and MICHAEL P. RANDLE, | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

Plaintiff Richard Ambrose ("Ambrose"), along with eleven other Plaintiffs who have been dismissed from this case, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 on July 29, 2008, alleging that Defendants—one corporation, the Department of Children and Family Services, "all counties and municipalities, unknown phone contractors and various officials and/or employees within the Illinois Department of Corrections ["IDOC"])—violated their constitutional rights (Doc. 1). Ambrose has been civilly committed to the IDOC's Big Muddy River Correctional Center ("BMRCC") pursuant to the Sexually Dangerous Persons Act ("SDPA"), 725 ILCS 205/0.01 *et seq.*, and he claims that he has suffered severe emotional distress at the hands of Defendants, in part, because he has not been offered any mental health treatment. On March 4, 2009, Chief District Judge David R. Herndon completed his preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A (Doc. 38). On March 6, 2011, Judge Herndon granted plaintiffs' request and appointed counsel to represent them in this matter (Docs. 39, 42). On August 25, 2009, Plaintiffs filed their Amended Complaint including claims based on both Illinois and federal law organized into 8 separate counts (Doc. 71).

In his July 1, 2010 Order adopting the Report and Recommendation of Magistrate Judge Proud in its entirety, Judge Herndon concluded that 6 of the 7 remaining Plaintiffs had failed to exhaust their administrative remedies prior to filing this action, and that Ambrose had not exhausted his administrative remedies as to 2 of the 5 remaining Defendants (Doc. 114, pp. 12-13). Judge Herndon noted that the following claims by Ambrose remain pending:

> Count 1: Claim under 42 U.S.C. § 1983 by against Defendants Walker, Randle, and Carich for deliberate indifference to his "constitutional rights to reasonable safety" in that defendants' agents and employees have verbally assaulted him, have housed him with general population inmates, have identified him as an SDP to general population inmates, and have instructed inmates to verbally assault him.
>
> Count 2: State law claim by Ambrose against Walker and Randle arising out of the events alleged in Count 1.
>
> Count 4: Section 1983 claim by Ambrose against Walker and Randle for subjecting him to improper searches.
>
> Count 5: Section 1983 claim by Ambrose against Walker, Randle, and Carich for deliberate indifference to his serious mental health needs.
>
> Count 6: State law claim by Ambrose against Walker, Randle, and Carich

*Id.* On June 14, 2011, Ambrose filed his written Consent (Doc. 161), and on June 22, 2011, the three remaining Defendants filed their written Consent to have this matter resolved by the undersigned pursuant to 28 U.S.C. 636(c). On June 28, 2011, Ambrose stipulated to the dismissal of all claims against Directors Walker and Randle in their individual capacities (Doc. 172).

On July 18, 2011, the Court held an in-court hearing on Ambrose's Motion to Exclude the Testimony of Dr. Terry Killian (Doc. 151), Ambrose's Motions in Limine (Doc. 154) and various pretrial matters raised in the Pretrial Briefs submitted by the parties (Docs. 179, 180). First, at the Court's direction, the parties agreed to substitute the current Director of the IDOC, Salvador Godinez, in his official capacity only, for former IDOC Directors Roger Walker and Michael Randle, in their official capacity. On July 19, 2011, the parties filed a Consent Motion to Substitute (Doc. 182) which the Court now **GRANTS.** Accordingly, Roger Walker and Michael Randle

SHALL be terminated as parties to this action and Salvador Godinez SHALL be substituted in their place, in his official capacity only.

**Pretrial Briefs (Docs. 179, 180)**

At the Court's direction, the parties were allowed to file Pretrial Briefs focused on three remaining substantive issues: 1) whether Eleventh Amendment sovereign immunity bars Ambrose's Illinois state law claims; 2) whether some of Ambrose's claims regarding the mental health treatment at BMRCC are barred by the *Heck v. Humphrey* doctrine; and 3) whether the relevant Illinois statutes create a private cause of action upon which Ambrose may seek relief.

First, the Court does not believe that any of the statutes cited by Ambrose were intended to create a private cause of action. Illinois courts have recognized that IDOC regulations and the Unified Code of Corrections were "never intended to confer rights on inmates or serve as a basis for constitutional claims." *Ashley v. Snyder*, 739 N.E.2d 897, 902 (Ill. App. Ct. 2000), *citing Sandin v. Conner*, 515 U.S. 472, 482 (1995). While apparently no Illinois court has addressed whether Illinois' SDPA creates such a private cause of action, there is no reason for this Court to believe that the result would be any different. Further, for the most part, Plaintiff's state law claims are duplicative of his federal constitutional claims and thus, unnecessary.

Even if the Court were to find that these state statutes created a private cause of action, Ambrose's state law claims against Defendants in their official capacities are barred by Eleventh Amendment immunity. Ambrose argues that Defendants waived their right to assert a sovereign immunity defense because of their failure to raise this defense until the eleventh hour. Ambrose relies primarily on the Ninth Circuit Court of Appeals decision in *Hill v. Blind Industries and Services of Maryland*, for the notion that "[r]equiring the prompt assertion of an Eleventh Amendment defense … minimizes the opportunity for improper manipulation of the judicial process." 179 F.3d 754, 758 (9th Cir. 1999). Defendants, in response, allege that a sovereign immunity defense may be raised at any point in the litigation and that they did not intentionally delay in raising the defense. The Court

agrees that intentional delay, such as the conduct outlined in *Hill*, *could* act as an explicit waiver of sovereign immunity. However, here, the Court does not find that the Defendant's conduct amounted to an explicit, unambiguous waiver of their sovereign immunity defense. Unlike the defendants in *Hill*, here, Defendants did not intentionally delay in asserting this defense as a tactical maneuver. As such, the Defendants are free to raise sovereign immunity as a defense.

Under *Ex parte Young*, 209 U.S. 123 (1908), the Eleventh Amendment does not bar a federal court from granting prospective injunctive relief against state officials on the basis of federal claims. The Eleventh Amendment, however, *does* prohibit federal courts from ordering state officials to conform their conduct to state law. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 90 ("When a federal court instructs state officials on how to conform their conduct to state law, this conflicts directly with the principles of federalism that underlie the Eleventh Amendment."). Accordingly, for all of the aforementioned reasons, Plaintiff's state law claims are **DISMISSED** ***without* prejudice.**

Under the doctrine announced by the Supreme Court in *Heck v. Humphrey*:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. 477, 486-87 (1994). Here, Ambrose has made no such showing that his designation as a sexual dangerous person has been called into question. Accordingly, any testimony suggesting that if Defendants had administered their program differently, then Ambrose would no longer be confined must be barred. Defendants argue that portions of the deposition testimony of Ambrose's expert, Dr. Craig Rypma, must be barred. The Court agrees. Accordingly, the Court sustained in part and overruled in part, Defendants'

Objections to Dr. Rypma's testimony. The parties were directed to conform their audio recordings to the Court's rulings.

In sum, unless and until his civil commitment has been invalidated, Ambrose may not sue for damages under § 1983 for being unlawfully confined. *See, e.g.*, *Thomas v. A. Schmitt*, 380 Fed.Appx. 549, 2010 WL 2464991, *1 (7th Cir. 2010) (unpublished). So, at this stage, the Court rules that Dr. Rypma will not be allowed to testify that misapplication of recidivism data and/or research is being used to wrongly justify Ambrose's continued confinement.

### **Ambrose's Motion to Exclude the Testimony of Dr. Terry Killian (Doc. 151)**

The Plaintiff filed a motion to exclude the expert testimony of Killian with a supporting Memorandum on May 18, 2011. The memorandum in support of the motion submitted by the Plaintiff lays out arguments and reasons requiring exclusions of Killian's testimony. (Doc. 152, Sections A-M). In their response, Defendants agreed to the majority of Plaintiff's arguments leaving all but five that are still in dispute: sections H, J, K, L and M.(Doc. 155).

Regarding Waiver Testimony (Doc. 152, Section H): Plaintiff contends that Killian is not qualified to offer expert opinions on the appropriateness of the waiver used for the SDP program at BMRCC. (Doc. 152 p.12). Plaintiff alleges that Killian does not have expertise in the drafting of legal waivers and that his opinion is merely "parroting" Dr. Carich's. Id. In his report, Killian addresses the waiver used for the SDP program primarily through the use of Carich's 2011 deposition and through what Carich told him (Doc. 152-1 p.28). Indeed, no less than three times does Killian state, "Carich told me," or "Carich said/noted," and it would appear as though Killian is merely repeating what Carich has stated (Doc. 152-1 p. 29).

The Seventh Circuit has stated that when an expert gave "his opinions in court … [they] appeared to be general observations regarding what is normal or usual business practice. As such his testimony did not meet the requisite level of reliability." *Naeem v. McKesson Drug Co.*, 444 F.3d 593,

608 (7th Cir. 2006). In the case at bar, Killian does mention that the Illinois Sex Offender Management Board cites § 1905.310 of the Illinois Administrative Code which describes in part a standard waiver used for sex offenders getting treatment. The statute requires a waiver that a sex offender shall enter into as a condition for treatment and describes what that waiver must include for those seeking treatment (Doc. 152-1 p.29). Although brief, Killian does show to the Court through objective measures that his opinion has some merit as to the validity of the waiver and that his opinion can be subjected to and verified by published literature in the field, namely the § 1905.310 of the Illinois Administrative Code. Further, it appears from Dr. Killian's report that he opines that the waivers used by BMRCC are consistent with those used in the clinical setting.

However, the Court **DIRECTS** Defendant to produce Dr. Killian's full curriculum vitae and for now, the Court **DENIES** Ambrose's Motion to Exclude this portion of Dr. Killian's testimony.

Regarding Defendant's responses to Ambrose's Grievances (Doc. 152, J): the Court **GRANTS** Ambrose's Motion to Exclude testimony by Dr. Killian into this highly administrative area of prison management. However, should Defendants believe that Dr. Killian's testimony falls within the narrow exception outlined on the Record, they may raise that during trial.

Regarding Dr. Killian's Opinion as to Ambrose's Current Recidivism Risk (Doc. 152, K): while the Court previously ruled that it believed that this testimony would be relevant and helpful to the jury, in light of the Court's ruling regarding Doctor Rypma's testimony the Court will now **GRANT** Plaintiff's motion and rule that Dr. Killian's proposed testimony on these issues is excluded as these issues are no longer relevant.

Regarding Dr. Killian's Diagnostic Formulations & Ambrose's Credibility (Doc. 152, L & M): Plaintiff alleges that Killian's diagnosis of Ambrose has no basis and fails to meet the accepted psychological standards for diagnosing a person (Doc. 152 p. 16). Plaintiff challenges Killian's position that "nothing has happened during the twelve intervening years that would alter [his]

assessment," arguing that there is no psychological research to support the assumption and that the assessments are outdated. *Id.*

Taken cumulatively § 13 (Doc. 152-1 p. 48) of Killian's report seems to function as a summary of factors to take into consideration for Ambrose's diagnosis. The Court does not agree with Plaintiff that Killian has failed to establish any scientific basis for his method by applying old assessments to render a current psychological diagnosis of Ambrose. The Court **DENIES** Plaintiff's motion on this point.

However, the Court is still concerned that Dr. Killian will offer improper opinions regarding Ambrose's believability. No such statements will be allowed. But to the extent that Dr. Killian is pointing out contradictory statements that form the basis for his opinion, Defendants may ask the Court to reconsider this ruling at trial. For now, the Court **GRANTS** the Motion to Exclude this portion of Dr. Killian's testimony.

**Ambrose's Motions in Limine (Doc. 154)**

No. 1: Prior Criminal Behavior—the parties represent that they have reached an agreement on this portion of Ambrose's motion with the exception of the issues implicated by section number 3.

No. 2: Exclusion of all testimony by Lieutenant Harold Schuler—Ambrose makes this request based upon Defendants failure to properly disclose Lt. Schuler as a witness pursuant to FED. R. CIV. P. 26(a)(1)(A). Defendants argued that their general disclosure of all records relating to discipline of Ambrose by Lt. Schuler (over 1,000 documents according to Ambrose's counsel) satisfied the spirit of Rule 26(a). The Court disagrees. There was no specific identification of Lt. Schuler as a potential witness and as such, Defendants failed to comply with their discovery obligations under Rule 26(a). Accordingly, the Court **GRANTS** this portion of Ambrose's Motion—Lt. Schuler SHALL be barred from testifying as a witness.

No. 3: Circumstances Under Which Ambrose was Civilly Committed as a Sexually Dangerous Person—the Court agrees, to a certain extent, with Ambrose's concerns here. Accordingly, Defendants will not be allowed to go into great detail regarding the facts underlying Ambrose's civil confinement. However, the Court also believes that some of these facts are inextricably intertwined with the ultimate issue of whether Ambrose was provided with adequate mental health treatment – especially as it relates to Mr. Ambrose's diagnosis as a pedophile. Accordingly the Court limits any evidence or testimony on this point to the fact that Ambrose was committed as a result of allegations of sex offenses involving three minor children.

No. 4: Suggestion that Plaintiff or his Counsel Prevented Defendants' Expert from Examining Plaintiff—this portion of Ambrose's motion is **GRANTED**. Plaintiff will be allowed to elicit the fact that Defendants' Expert did not examine him. However, if Plaintiff should venture beyond eliciting this simple fact, then he may open the door to an appropriate response from Defendants or clarification by the Court.

Nos. 5 & 6: Other Parties Dismissed from this Lawsuit and Past Litigation by Ambrose—the parties reached an agreement on these two portions of Ambrose's motion and as a result, they were both **GRANTED.**

Finally, the Court took up and considered on the Record each of Defendants' Objections to Ambrose's proposed Exhibits. The parties were able to reach agreement on all objections and the Court memorialized its rulings on the Record. A Joint Statement of the Case, along with a clean and marked copy of proposed Jury Instructions SHALL be submitted by 5:00 p.m. on Thursday, July 21, 2011.

**IT IS SO ORDERED**.

DATED July 21, 2011.  /s/ **Stephen C. Williams**

STEPHEN C. WILLIAMS
United States Magistrate Judge